IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON   FILED'07 MAR 12 12:15USDC-ORP

| | | |
|---|---|---|
| MIKE A. MACEIRA, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 06-6053-PK |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

RICHARD F. McGINTY
McGinty & Belcher
P.O. Box 12806
Salem, OR 97301
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

JOHANNA VANDERLEE
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

PAPAK, Magistrate Judge:

Plaintiff Mike Maceira seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons that follow, the Commissioner's decision should be reversed and this matter should be remanded for the immediate award of benefits.

## BACKGROUND

Born in 1961, Maceira has a college education. Tr. 101, 118.[2] Between 1993 and 2002 Maceira worked as a school aide, daycare assistant, and office assistant. Tr. 150.

Maceira filed applications for DIB and SSI on November 6, 2002, relying upon May 6, 1995 as his onset date. Tr. 101-03, 458-60. Maceira stated he has been unable to work since July 3, 2002. Tr. 112. These applications were denied initially and upon reconsideration. Tr. 63-67, 72-74. A hearing was held before an Administrative Law Judge (ALJ) on January 20, 2005. Tr. 29-60. Maceira was 43 years old on the day of the hearing. On April 6, 2005, the ALJ issued a decision finding Maceira not disabled. Tr. 16-28. The Appeals Council denied review of this decision, making the ALJ's decision final. Tr. 6-8. Maceira presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five

---

[2]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer filed June 26, 2006 (Docket # 8).

2 - FINDINGS AND RECOMMENDATION

steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). Each step is potentially dispositive. *Id.* Maceira challenges the ALJ's evaluation of the evidence at step three and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to meet or equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence to assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.1545(a), 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv). If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*, 482 U.S. at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that a claimant is available to perform work available in the national economy. *Yuckert*, 482 U.S. at 146 n.5; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(f), 416.920(f).

## THE ALJ'S FINDINGS

The ALJ found that Maceira's "allegations regarding his limitations are not entirely credible." Tr. 27. The ALJ found Maceira's schizophrenia "severe," at step two in the sequential analysis, but found that it did not meet or equal a listed impairment at step three. Tr. 18-19, 27. The ALJ assessed Maceira's RFC:

> The claimant retains the ability to perform work at all levels of physical exertion. Due to mental impairments and side effects of medication, he is limited to simple, routine, repetitive, low stress work with only occasional interaction with co-workers and the general public.

Tr. 27.

At step four, the ALJ found that Maceira's RFC precluded performance of his past relevant work. *Id.* At step five, the ALJ determined that Maceira could perform work in the national economy as a parking lot cashier, produce sorter, or laundry folder. *Id.* Accordingly, the ALJ determined that Maceira was not disabled under the Act at any time through the date of his decision. Tr. 27-28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) *citing Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Maceira contends the ALJ failed to reach an accurate RFC assessment because he improperly rejected Maceira's testimony and improperly addressed medical evidence, specifically the effect of Dr. Garrison's testimony that Maceira meets Listing 12.03 at step three in the sequential analysis. Maceira also contends the ALJ improperly considered the effects of stress upon his ability to work, and solicited inaccurate vocational testimony in relying upon the disputed RFC assessment. Because this court finds that Maceira's impairment meets a listing at step three, further sequential analysis is unnecessary and this matter will be remanded for an award of benefits.

### I.     Maceira's Credibility

This court first addresses Maceira's credibility, which in turn influences the ALJ's evaluation of his reports to physicians and subsequent evaluation of the medical record.

5 - FINDINGS AND RECOMMENDATION

Maceira claims the ALJ reached an erroneous credibility conclusion because the ALJ rejected his "description of his symptoms limitations." Pl. Opening Br. 20. Maceira specifically contests the ALJ's finding that Maceira's efforts to seek vocational rehabilitation and subsequent disc jockey work "indicate extended periods of good functioning and an ability to perform some type of work activity." Pl. Opening Br. 20-21. Maceira suggests that in drawing a negative credibility inference from this activity, the ALJ failed to consider whether this activity represents sustained work activity. Maceira also argues the ALJ erred in subsequently citing his claim for unemployment benefits as evidence of Maceira's unemployability. Pl. Opening Br. 22.

  *a.*   ***Credibility Analysis***

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Absent a finding of malingering,[3] the ALJ must cite "clear and convincing" reasons for finding a claimant not credible. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom

---

[3]The ALJ made no malingering finding.

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2005).

### b.  *Sustained Activity*

The ALJ addressed Maceira's activities of daily living, including his performance of limited work activity. Tr. 23. The ALJ noted that Maceira left his Department of Motor Vehicles clerical job in March 2002 "when he went on disability," but did not consider the reasons for his departure. *Id.* Similarly, the ALJ noted that Maceira was fired from his disc jockey job for threatening a customer and later reported an inability to work because hallucinatory voices impaired his concentration. *Id.* The ALJ failed to consider the ramifications of Maceira's identified schizophrenia impairment in evaluating this testimony. This court finds that the ALJ's citation of work activity, interrupted by documented symptoms of schizophrenia, to discredit a claimant's symptom testimony does not meet the clear and convincing standard.

The ALJ also cited Maceira's activities such as "doing errands," coaching boy's basketball, and weekly guitar lessons. Tr. 24. Such erratic activity does not constitute substantial daily activity consistent with ability to perform competitive work activity. *See Reddick v. Chater*, 157 F.3d 715, 722; *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ's reasoning should not be sustained.

### c.  *Unemployment Benefits*

The ALJ also suggested Maceira reported that he received unemployment benefits and relied upon this information to support his negative credibility finding. Tr. 24. The ALJ reasoned that, "In order to qualify for such payments, [Maceira] was required to sign a statement indicating

7 - FINDINGS AND RECOMMENDATION

that he was available for employment." *Id.* Maceira submits that the ALJ "misunderstands Oregon unemployment law," and that furthermore, the "statement" cited by the ALJ is not in the present record. Pl. Opening Br. 22.

Maceira's hearing testimony does not indicate that he reported drawing unemployment benefits to the ALJ. Tr. 6-22. The ALJ drew this inference from Dr. Knowles' statement that Maceira "manages [his] own money from unemployment insurance." Tr. 321. The file history suggests that Maceira received short term disability payments between August 15, 2002 and November 11, 2002, but is silent regarding unemployment insurance benefits. Tr. 460.

The Commissioner asserts that, "The ALJ was allowed to conclude the language of the workers compensation statute did not evidence Plaintiff's inability to work full time." Defendant's Br. 17. The ALJ did not refer to any such language. The specific unemployment insurance to which Dr. Knowles refers, and it's attendant requirements, is unclear from the record. This court's review is restricted to the record. The ALJ's reasoning regarding "unemployment benefits" is not supported by the record and should not be sustained.

In conclusion, this court finds the ALJ's credibility analysis unsupported. The ALJ's credibility decision should not be sustained.

### II. Medical Source Statements

The ALJ found Maceira's schizophrenia "severe" at step two in the sequential analysis but found that it did not meet or equal a listed impairment at step three. Tr. 18, 21-22. Maceira contends the ALJ improperly evaluated the opinions of treating psychiatrist Dr. Knowles, and medical expert Dr. Garrison, and specifically suggests that if Dr. Garrison's opinion is credited he meets the listing criteria for schizophrenia. Pl. Opening Br. 14-20. This court also notes that the

ALJ omitted discussion of examining psychologist Dr. Glaus.

### a. *Evaluating Medical Opinions*

Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of a treating physician. *Id.* Likewise, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Id.* "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis original). This court accordingly first addresses Maceira's treating and examining physicians, and then considers medical expert testimony based upon a review of the records produced by the treating and examining physicians.

### b. *Treating Physician Dr. Knowles*

Maceira suggests the opinion of treating psychiatrist Dr. Knowles is entitled to controlling weight. Pl. Opening Br. 16. Maceira provides no citation for this argument. The ALJ considered Dr. Knowles' opinion in detail, relying upon Dr. Knowles's records. Tr. 19-24. The ALJ concluded, however, that

> I have also considered the February 12, 2002 opinion of treating psychiatrist Dr. Knowles as reported to the claimant's employer that although the claimant was not incapacitated, he was capable of working only intermittently due to "intermittent sleep disturbance, tiredness, inability to focus or concentrate due illness or medications." However, that opinion is given little weight for several reasons. Dr. Knowles had been treating the claimant for less than one month when he reported that opinion. In addition, Dr. Knowles' opinion is inconsistent with more recent treatment

9 - FINDINGS AND RECOMMENDATION

>records which document improvement in the claimant's condition
>with medications and the claimant's actual level of functioning as
>evinced by his continued efforts at work activity, his participation
>in vocational rehabilitation, and other activities such as coaching
>basektball and taking guitar lessons. Moreover, Dr. Knowles'
>opinion was restricted to consideration of the claimant's former job
>as an office assistant which the vocational expert has described as
>semiskilled work. There is no indication that the claimant is
>incapable of maintaining unskilled, low stress work on a regular
>full time basis.

Tr. 25 (internal citations omitted).

The ALJ's analysis discards Dr. Knowles's opinion by referring to Maceira's activities of daily living. *Id.* This reference is not sustained for the reasons discussed above. Furthermore, the record does not indicate that Dr. Knowles's February 2003 opinion "was restricted to consideration of the claimant's former job as an office assistant." Tr. 25, 320-22. This reasoning apparently applies to examining physician Dr. Glaus, discussed below. Finally, the ALJ rejected Dr. Knowles's opinion in part because the ALJ noted that Dr. Knowles first formulated his opinion shortly after initiating treatment with Maceira. Tr. 25. This is erroneous: there is no bright line rule determining when a doctor-patient relationship becomes a "treating" relationship. *Benton v. Barnhart*, 331 F3.d 1030, 1038 (9th Cir. 2003). One visit may suffice. *Id.*

The record shows that Dr. Knowles treated Maceira between January 5, 2002 and August 21, 2003. Tr. 320, 323. In his January 2002 evaluation, Dr. Knowles assessed Maceira with "schizophrenia by history," noting auditory hallucinations "versus" internal dialogue. Tr. 338. On February 26, 2002 Dr. Knowles refined his diagnosis, finding schizophrenia (indicated by

> records which document improvement in the claimant's condition
> with medications and the claimant's actual level of functioning as
> evinced by his continued efforts at work activity, his participation
> in vocational rehabilitation, and other activities such as coaching
> basektball and taking guitar lessons. Moreover, Dr. Knowles'
> opinion was restricted to consideration of the claimant's former job
> as an office assistant which the vocational expert has described as
> semiskilled work. There is no indication that the claimant is
> incapable of maintaining unskilled, low stress work on a regular
> full time basis.

Tr. 25 (internal citations omitted).

The ALJ's analysis discards Dr. Knowles's opinion by referring to Maceira's activities of daily living. *Id.* This reference is not sustained for the reasons discussed above. Furthermore, the record does not indicate that Dr. Knowles's February 2003 opinion "was restricted to consideration of the claimant's former job as an office assistant." Tr. 25, 320-22. This reasoning apparently applies to examining physician Dr. Glaus, discussed below. Finally, the ALJ rejected Dr. Knowles's opinion in part because the ALJ noted that Dr. Knowles first formulated his opinion shortly after initiating treatment with Maceira. Tr. 25. This is erroneous: there is no bright line rule determining when a doctor-patient relationship becomes a "treating" relationship. *Benton v. Barnhart*, 331 F3.d 1030, 1038 (9th Cir. 2003). One visit may suffice. *Id.*

The record shows that Dr. Knowles treated Maceira between January 5, 2002 and August 21, 2003. Tr. 320, 323. In his January 2002 evaluation, Dr. Knowles assessed Maceira with "schizophrenia by history," noting auditory hallucinations "versus" internal dialogue. Tr. 338. On February 26, 2002 Dr. Knowles refined his diagnosis, finding schizophrenia (indicated by

diagnostic code "295.60").[4] Tr. 337. Dr. Knowles affirmed this diagnosis at bimonthly intervals between January 2002 and July 2003. Tr. 324-38. In July 2003, Dr. Knowles again revised his diagnosis to include Post-Traumatic Stress Disorder, rather than schizophrenia, but continued to include the schizophrenia indicator ("295.60") in his notes. Tr. 324.

Dr. Knowles based his diagnosis and analysis upon clinical examination, which is documented by the appropriate notes. Tr. 324-38. On February 18, 2003, Dr. Knowles stated that Maceira's basic functioning showed "minimal change" since Maceira's initial January 2002 treatment with Dr. Knowles. Tr. 321. Dr. Knowles also stated that Maceira's functioning is "unpredictable," that Maceira has limited concentration, and that workplace stress causes deterioration in Maceira's condition. Tr. 322.

While a specialist is not required for psychiatric diagnosis, a specialist is generally given greater weight. *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987); 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). As a specialist and longitudinal treating physician, Dr. Knowles's opinion should be accorded significant weight. The ALJ failed to provide clear and convincing reasons for rejecting Dr. Knowles's opinion and his analysis of Dr. Knowles's opinion should be rejected.

---

[4]Dr. Knowles's treatment notes indicate diagnostic code 295.60, described as "Residual Type Schizophrenia." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 316-17 (4th ed. 2000). This indicator is used when "there has been at least one episode of Schizophrenia, but the current clinical picture is without prominent psychotic symptoms . . . . There is continuing evidence of disturbance as indicated by the presence of negative symptoms (e.g. flat affect, poverty of speech, or avolition) or two or more attenuated positive symptoms (e.g. eccentric behavior, mildly disorganized speech, or odd beliefs)." *Id.*

11 - FINDINGS AND RECOMMENDATION

### c.    *Examining Psychologist Dr. Glaus*

This court also notes the ALJ's omission of the opinion of examining psychologist Dr. Glaus. Dr. Glaus evaluated Maceira in April 2002 in conjunction with Maceira's disability leave from his office clerk job at the Department of Motor Vehicles (DMV). Tr. 228-232.

Dr. Glaus's session incoprorated a clinical interview and testing. Tr. 228. Dr. Glaus's diagnoses included Psychotic Disorder, with rule-out diagnoses of Schizoaffective Disorder and Schizophrenia, Paranoid Type. Tr. 231. Dr. Glaus's report concluded with specific answers to questions posed by Maceira's employer. Dr. Glaus found that Maceira's inability to perform his DMV job "is deemed to be the result of his psychiatric condition." Tr. 232. In conclusion, Dr. Glaus stated:

> Given Mr. Maceira's mental health history, current decline in psychological health and marginal recovery under psychiatric treatment, the prognosis of his ability to perform this job or any other job at this time is poor. However, with further psychiatric treatment over three to six months, it is conceivable that his psycho-social functioning will appreciably improve.

Tr. 232.

The ALJ omitted discussion of Dr. Glaus's report. An ALJ is not required to discuss evidence "neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). This court cannot construe detailed medical assessment addressing Maceira's ability to function in the workplace as such. The ALJ's omission and resultant rejection of Dr. Glaus's testimony was error and should not be sustained.

### d.    *Medical Expert Dr. Garrison*

Psychologist Dr. Garrison testified as a medical expert at Maceira's hearing. Tr. 52-56.

Maceira suggests the ALJ omitted Dr. Garrison's opinion. The ALJ, however, noted Dr. Garrison's testimony regarding Maceira's decompensation, blunt affect, and emotional withdrawal, and Dr. Garrison's opinion that Maceira experienced schizophrenia rather than Post-Traumatic Stress Disorder. Tr. 22. The ALJ also noted Dr. Garrison's testimony regarding Maceira's decompensation as a response to stress. Tr. 23. The ALJ made no further finding regarding Dr. Garrison's testimony and did not explicitly reject it.

The ALJ asked Dr. Garrison to consider Maceira's impairments between July 2002 and the date of the hearing. Tr. 53. Dr. Garrison stated that Maceira "satisfies the criteria for 12.03, which is . . . schizophrenia." *Id.* The ALJ asked Dr. Garrison to consider the "B" criteria for this listing. Tr. 54. Dr. Garrison responded, "The challenge is that his – he does well, and then he does poorly . . . in the time we're talking about there's at least 3 episodes of decompensation." *Id.* Dr. Garrison affirmed that these decompensation episodes each lasted "two weeks or more." *Id.*

Dr. Garrison elaborated that Maceira's activities of daily living "are markedly impaired," when Maceira is decompensated, but "none to mildly mildly impaired" when Maceira is "at his best." Tr. 54. Dr. Garrison also stated that Maceira's social functioning is "moderately impaired at best, extremely impaired at worst." *Id.* Regarding Maceira's concentration, persistence, and pace, Dr. Garrison concluded, "we don't have much record of that, how he does at his good times. But [during his] decompensations [they are] markedly impaired." Tr. 54-55.

Dr. Garrison also testified that Maceira's decompensation episodes are precipitated by stress, explaining,

> [A]nd that's pretty clearly the pattern is that something will become stressful. He will start to decompensated [sic]. Part of the

13 - FINDINGS AND RECOMMENDATION

>           decompensation is that he hears voices, but he also gets very
>           reactive to things. And then just is in a downward spiral, that he
>           doesn't have any way to correct, doesn't have any way to stop it.

Tr. 55.

Dr. Garrison's opinion establishes that Maceira meets Social Security "Listing" criteria for schizophrenia. 20 C.F.R. § 404, Subpart P, Appendix 1, 12.03. After a claimant meets the "A" criteria, based upon medical documentation of a schizophrenic, paranoid, or psychotic disorder, if a physician appropriately endorses two "B" criteria *or* one "C" criteria the claimant meets the Listing. *Id.* The "B" criteria are met when two or more marked limitations are met in one of four functional areas. *Id.* To meet the "C" criteria, a claimant must have a documented history of a chronic schizophrenic, paranoid, or other psychotic disorder lasting two years or more and causing more than minimal limitations in basic work activities with symptoms attenuated by medication or psychological support. *Id.* The claimant must additionally show repeated episodes of decompensation, *or* a residual disease process causing predicted decompensation in response to marginal adjustments, *or* a current history of at least a year-long inability to function outside a "highly supportive living arrangement." *Id.* Dr. Garrison's testimony establishes three marked restrictions in the "B" criteria, as well as endorsement of "C" criteria decompensation.

Dr. Garrison's testimony is additionally corroborated by treating and examining physicians Drs. Knowles and Glaus. Drs. Knowles and Glaus respectively both suggested Maceira carried possible or probable schizophrenia diagnosis. Tr. 131, 321. Both additionally documented Maceira's workplace difficulties, poor stress tolerance, and impaired concentration. Tr. 231, 232, 320, 322.

14 - FINDINGS AND RECOMMENDATION

The ALJ failed to give appropriate reasons for rejecting Dr. Garrison's opinion regarding Maceira's decompensation and associated marked impairments in activities of daily living, concentration, persistence, and pace, and social functioning. Dr. Garrison's testimony is not contradicted by Maceira's treating and examining physicians. Therefore, Dr. Garrison's testimony constitutes substantial evidence. *See Lester*, 81 F.3d at 831. The ALJ's analysis of Dr. Garrison's testimony should not be sustained.

For the reasons above, this court finds that the ALJ did not adequately evaluate the opinions of Drs. Knowles, Glaus, and Garrison. Their opinions should be credited. *Lester*, 81 F.3d at 834. Crediting their opinions establishes that Maceira meets listing 12.03 at step three in the sequential analysis. If a claimant is found to meet a listing at step three in the sequential analysis, he is considered presumptively disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Further challenges to the ALJ's findings at steps four and five of the sequential analysis will not be considered.

## **REMAND**

This court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Brown*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits

directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). Such is the case here: the opinions of Drs. Knowles, Garrison, and Glaus agree that Maceira meets Listing 12.03. Their opinions should be credited and the matter should be remanded for an immediate award of benefits.

## CONCLUSION

For these reasons, this court recommends reversing the decision of the Commissioner and remanding this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 26, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 12th day of March, 2007.

Paul Papak
United States Magistrate Judge